1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYNELL IHILANI WILEY, | Case No. EDCV 15-1618 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER OF REMAND |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.   SUMMARY

On August 10, 2015, Raynell Ihilani Wiley ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 12, 2015 Case Management Order ¶ 5.

///
///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is REVERSED AND REMANDED for further proceedings

3    consistent with this Memorandum Opinion and Order of Remand.

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5         **DECISION**

6         On April 10, 2012, plaintiff filed applications for Supplemental Security

7    Income and Disability Insurance Benefits.  (Administrative Record ("AR") 10,

8    139, 141).  Plaintiff asserted that she became disabled on October 1, 2011, due to

9    lupus. (AR 10, 173).  The Administrative Law Judge ("ALJ") examined the

10   medical record and heard testimony from plaintiff (who was represented by

11   counsel) and a vocational expert on September 23, 2013.  (AR 21-39).

12        On September 26, 2013, the ALJ determined that plaintiff was not disabled

13   through the date of the decision.  (AR 10-17).  Specifically, the ALJ found:

14   (1) plaintiff suffered from the severe impairment "lupus (SLE)" (AR 12);

15   (2) plaintiff's impairment did not meet or medically equal a listed impairment[1]

16   (AR 13); (3) plaintiff retained the residual functional capacity to perform light

17   work (20 C.F.R. §§ 404.1567(b), 416.967(b)) but was limited to frequent handling

18   and fingering with the right dominant hand, could not work in direct sunlight, and

19   could not be exposed to excessive heat or cold (AR 13); (4) plaintiff could not

20   perform any past relevant work (AR 15); (5) there are jobs that exist in significant

21

22        [1]At step three the ALJ made the following specific findings:

23

24        The undersigned considered the claimant's impairment under listing 14.02.
         The claimant's impairment does not meet or medically equal the criteria of any
25        medical listing.  No treating or examining physician has recorded findings
         equivalent in severity to the criteria of any listed impairment, nor does the
26        evidence show medical findings that are the same or equivalent to those of any
         listed impairment.
27

28   (AR 13).

                                              2

1    numbers in the national economy that plaintiff could perform, specifically Cashier

2    II, Mail clerk, and Office helper (AR 15-16); and (6) plaintiff's allegations

3    regarding the intensity, persistence, and limiting effects of subjective symptoms

4    were not entirely credible (AR 14).

5        The Appeals Council denied plaintiff's application for review.  (AR 1).

6    **III.    APPLICABLE LEGAL STANDARDS**

7        **A.    Sequential Evaluation Process**

8        To qualify for disability benefits, a claimant must show that the claimant is

9    unable "to engage in any substantial gainful activity by reason of any medically

10   determinable physical or mental impairment which can be expected to result in

11   death or which has lasted or can be expected to last for a continuous period of not

12   less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

13   (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The

14   impairment must render the claimant incapable of performing the work the

15   claimant previously performed and incapable of performing any other substantial

16   gainful employment that exists in the national economy.  Tackett v. Apfel, 180

17   F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

18       In assessing whether a claimant is disabled, an ALJ is to follow a five-step

19   sequential evaluation process:

20       (1)    Is the claimant presently engaged in substantial gainful activity?  If

21              so, the claimant is not disabled.  If not, proceed to step two.

22       (2)    Is the claimant's alleged impairment sufficiently severe to limit

23              the claimant's ability to work?  If not, the claimant is not

24              disabled.  If so, proceed to step three.

25       (3)    Does the claimant's impairment, or combination of

26              impairments, meet or equal an impairment listed in 20 C.F.R.

27              Part 404, Subpart P, Appendix 1?  If so, the claimant is

28              disabled.  If not, proceed to step four.

3

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not rely.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but

4

1   less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan,
2   911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence
3   supports a finding, a court must "'consider the record as a whole, weighing both
4   evidence that supports and evidence that detracts from the [Commissioner's]
5   conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)
6   (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  A denial of benefits
7   must be upheld if the evidence could reasonably support either affirming or
8   reversing the ALJ's decision.  Robbins, 466 F.3d at 882 (a court may not
9   substitute its judgment for that of the ALJ) (citing Flaten, 44 F.3d at 1457); see
10  also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more
11  than one rational interpretation, we must uphold the ALJ's findings if they are
12  supported by inferences reasonably drawn from the record.") (citation omitted).

13          Even when an ALJ's decision contains error, it must still be affirmed if the
14  error was harmless.  Treichler v. Commissioner of Social Security Administration,
15  775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was
16  inconsequential to the ultimate nondisability determination; or (2) the ALJ's path
17  may reasonably be discerned, even if the ALJ explains the ALJ's decision with
18  less than ideal clarity.  Id. (citation, quotation marks, and internal quotations
19  marks omitted).

20          A reviewing court may not make independent findings based on the
21  evidence before the ALJ to conclude that the ALJ's error was harmless.
22  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted);
23  see also Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (district court may
24  not use harmless error analysis to affirm decision on ground not invoked by ALJ)
25  (citation omitted).  Where a reviewing court cannot confidently conclude that an
26  error was harmless, a remand for additional investigation or explanation is
27  generally appropriate.  See Marsh, 792 F.3d at 1173.
28  ///

1    **IV.    DISCUSSION**

2          Plaintiff contends that the ALJ failed properly to develop the record and

3    evaluate the medical evidence regarding Listing 14.02A, a listing that plausibly

4    applies to plaintiff's case.  (Plaintiff's Motion at 2-6).  The Court agrees.  Since

5    the Court cannot find the ALJ's errors harmless, a limited remand is warranted.

6          **A.      Pertinent Law**

7          At step three of the sequential evaluation process, the ALJ must determine

8    whether a claimant has an impairment or combination of impairments that meets

9    or equals a condition outlined in a listing.  See 20 C.F.R. §§ 404.1520(d),

10   416.920(d).  An impairment matches a listing if it meets all of the specified

11   medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990), superseded by

12   statute on other grounds as stated in Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th

13   Cir. 2013); Tackett, 180 F.3d at 1098.  An impairment that manifests only some of

14   the criteria in a listing, no matter how severely, does not qualify.  Sullivan, 493

15   U.S. at 530; Tackett, 180 F.3d at 1099.

16         Although a claimant has the burden of proving disability at step three, an

17   ALJ must still adequately discuss and evaluate the evidence before concluding that

18   a claimant's impairment or combination of impairments fail to meet or equal a

19   listing.  See Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("[I]n

20   determining whether a claimant equals a listing under step three . . . the ALJ must

21   explain adequately his evaluation of alternative tests and the combined effects of

22   the impairments."); see also Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)

23   (plaintiff must present plausible theory as to how an impairment or combination of

24   impairments equals a listed impairment) (citations omitted).  Remand is

25   appropriate where an ALJ fails adequately to consider a listing that plausibly

26   applies to a plaintiff's case.  See Lewis, 236 F.3d at 512, 514 ("An ALJ must

27   evaluate the relevant evidence before concluding that a claimant's impairments do

28   not meet or equal a listed impairment.").

In order to be considered disabled under Listing 14.02A a claimant must present evidence that she has systemic lupus erythematosus ("SLE") "[a]s described in 14.00D1," and that there was "[i]nvolvement of two or more organs/body systems" with "1. One of the organs/body systems involved to at least a moderate level of severity; and 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02(A). Section 14.00D1 states that the listing level autoimmune disorder of SLE is documented and evaluated as follows:

> a. General. Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

> b. Documentation of SLE. Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.00(D)(1).

7

1    **B.    Analysis**

2    First, the record contains evidence that Listing 14.02A plausibly applies in

3  plaintiff's case.  Doctors consistently diagnosed plaintiff with recurrent SLE, and

4  the ALJ found SLE to be a severe, medically determinable impairment in plaintiff's

5  case.  (AR 12, 204, 206, 212, 213-14, 220, 233-34, 241-42).  In addition, treatment

6  records suggest involvement, in part at a "moderate level of severity," with

7  plaintiff's skin (AR 204, 207, 213, 220, 221, 233) and immune system (AR 206

8  [noting "concern for [rheumatoid arthritis] given extensive synovitis"[2]]; AR 220

9  [noting "organ involvement" including "joints" and "skin"]).  The medical records

10 also suggest that plaintiff had at least two of the constitutional symptoms or signs –

11 *i.e.*, severe fatigue (AR 205-07, 213-15 ) and malaise[3] (see, e.g., AR 204-05 [SLE

12 "not well controlled," plaintiff "still has [] a lot of problems"]; AR 206-07

13 [complaints of "cold, aches [and] pains in hands, ankles, knees"]).

14    Second, the boilerplate language in the ALJ's step three determination,

15 without more, is insufficient to support the ALJ's finding that plaintiff's SLE did

16 not meet or medically equal Listing 14.02A.  See Lewis, 236 F.3d at 512 ("A

17 boilerplate finding is insufficient to support a conclusion that a claimant's

18 impairment does not [meet or equal a listed impairment].") (citing Marcia, 900 F.2d

19 at 176); see also 42 U.S.C. § 405(b)(1) (An unfavorable Social Security disability

20 decision must "contain a statement of the case, in understandable language, setting

21 forth a discussion of the evidence, and stating the Commissioner's determination

22 and the reason or reasons upon which it is based.").

23 ///

24 _____

25    [2]"Synovitis: Inflammation of the synovial membrane, the lining of the joints."  Definition

26 of Synovitis, MedicineNet.com web site, available at
   http://www.medicinenet.com/script/main/art.asp?articlekey=5688.

27    [3]"Malaise is a generalized feeling of discomfort, illness, or lack of well-being."  Malaise,

28 Drugs.com web site, available at http://www.drugs.com/enc/malaise.html.

1    Third, the ALJ's discussion of plaintiff's SLE elsewhere in the decision adds
2    no support to the ALJ's conclusory step-three finding.  See generally Lewis, 236
3    F.3d at 513 ("Marcia simply requires an ALJ to discuss and evaluate the evidence
4    that supports his or her [step three] conclusion; it does not specify that the ALJ
5    must do so under the heading 'Findings.'").  For example, the ALJ stated, in part,
6    that plaintiff merely "had complaints of swelling and fatigue and medications were
7    adjusted to coincide with the [plaintiff's] complaints."  (AR 14) (citing Exhibits 1F
8    [AR 202-12], 2F [AR 213-24]).  This brief statement, however, does not accurately
9    summarize the full content or tone of the exhibits the ALJ cited.  See generally
10   Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (error for ALJ to
11   paraphrase medical evidence in manner that is "not entirely accurate regarding the
12   content or tone of the record"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.
13   1984) (ALJ may not selectively rely on only the portions of record which support
14   non-disability) (citations omitted).  To the contrary, the referenced medical records
15   document that plaintiff had more, and at times, more severe SLE symptoms and
16   pain over time, some of which persisted *despite* the adjustment of plaintiff's
17   medications at apparently every medical appointment.  (AR 211-12 [January 17,
18   2012 Emergency Treatment Record – noting flare up of SLE symptoms with joint
19   pain, swelling, and skin problems]; AR 206-07 [March 23, 2012, treatment record –
20   plaintiff had "recurrent SLE" and was "more fatigued" with occasional swelling,
21   recent (although not current) malar[4] rash, and "cold, aches [and] pains in hands,
22   ankles, knees," and doctors noted "concern for [rheumatoid arthritis] given
23   extensive synovitis"]; AR 204-05 [May 25, 2012 treatment record – SLE "not well
24   controlled," plaintiff "still has [] a lot of problems," felt "tired," had bilateral knee
25   pain with right knee "now [hurting] more," and possible rash on face]; AR 220-21
26
27       [4]A "malar" is a rash that "may spread over [the] nose and cheeks in the shape of a
     butterfly."  How Lupus Affects Your Skin, WebMD web site, available at
28   http://www.webmd.com/lupus/guide/how-lupus-affects-your-skin.

9

1  [August 24, 2012 treatment record – SLE "recurrent" with increased symptoms
2  when medication changed, continuing skin problems (which increased with sun
3  exposure), joint pain and swelling ("synovitis") which had increased in the hands,
4  decreased appetite, and "organ involvement" only with "joints" and "skin"]; AR
5  213-15 [November 30, 2012 treatment record – plaintiff "still" had discoid rash on
6  neck, forehead, and ears, again complained of joint pain in her left hip, right knee,
7  and lower back, and felt "fatigued most of the time"]).

8       The ALJ also noted that on March 7, 2013, plaintiff reported that her
9  symptoms and arthritis were more severe for the month and a half when plaintiff
10 had stopped taking one of her medications (*i.e.* "MTX") because there were "no
11 refills." (AR 14) (citing Exhibit 5F at 1-2 [AR 233-34]).  Such treatment records,
12 however, still characterized plaintiff's disease as "active," documented that
13 plaintiff continued to have joint pain, synovitis (swelling), and arthritis even with
14 medication, and reflected that plaintiff had *not* "denied any SLE on her face" (as
15 the ALJ asserted, (AR 14)), but instead that plaintiff reportedly had "discoid"
16 lesions on her face and ears.  (AR 233-34).  The ALJ concluded that "[o]n June 7,
17 2013, the [plaintiff] reported doing well overall," and that "[t]here were no further
18 treatment records for review."  (AR 14) (citing Exhibit 7F at 1 [AR 241]).
19 Nonetheless, the following page of the exhibit the ALJ cited is a treatment record
20 (approved by a medical doctor) which presented detailed clinical findings from the
21 same date (*i.e.*, June 7, 2013) including plaintiff's continued fatigue, synovitis on
22 both elbows, and "active arthritis."  (AR 242).  The ALJ also generally concluded
23 that "the medical records reveal that [plaintiff's] medications have been relatively
24 effective in controlling [plaintiff's] symptoms."  (AR 14).  In stark contrast,
25 however, the State agency reviewing physicians (to whom the ALJ gave
26 "significant weight") collectively opined that the treatment records showed that
27 plaintiff's SLE was "<u>not</u> well controlled."  (AR 44, 49, 51, 62, 71) (emphasis
28 added).

1    Although presumably inadvertent, the multiple incorrect characterizations of
2    the medical evidence above nonetheless call into question the validity of both the
3    ALJ's conclusory evaluation of Listing 14.02A and the ALJ's decision as a whole.
4    See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (A
5    "specific finding" that consists of an "inaccurate characterization of the evidence"
6    cannot support ALJ's determination); Lesko v. Shalala, 1995 WL 263995 *7
7    (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical
8    record" found to constitute reversible error).

9    Fourth, the ALJ did not "completely adopt[]" the opinions of any specific
10   reviewing physician regarding plaintiff's limitations, but instead purportedly
11   "adopted [] specific restrictions on a function-by-function basis" that the ALJ
12   determined were "best supported by the objective evidence as a whole," and as
13   discussed above, implicitly rejected the consensus opinion from the only medical
14   experts in the record that plaintiff's SLE was "not well controlled." In light of the
15   foregoing and the instant medical record (which the ALJ found to be "relatively
16   sparse"), it appears that the ALJ's findings regarding plaintiff's SLE-related
17   limitations were erroneously based solely on the ALJ's own, lay interpretation of
18   plaintiff's testimony and the raw data from individual treatment records.
19   Consequently, the ALJ's decision, at least regarding plaintiff's residual functional
20   capacity, also lacks substantial evidentiary support.  See Penny, 2 F.3d at 958
21   ("Without a personal medical evaluation it is almost impossible to assess the
22   residual functional capacity of any individual."); Tagger v. Astrue, 536 F. Supp. 2d
23   1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported
24   by medical evidence, particularly the opinion of a treating or an examining
25   physician.") (citations and internal quotation marks omitted); cf. Banks v. Barnhart,
26   434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[ALJ] must not succumb to the
27   temptation to play doctor and make . . . independent medical findings.") (quoting
28   Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)) (quotation marks omitted);

11

Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.") (citations omitted).

Finally, the Court cannot find the ALJ's errors to be harmless since, as discussed above, the record contains evidence which plausibly supports a finding that plaintiff is disabled at step three under Listing 14.02.

Accordingly, it is appropriate to remand the case to permit any further development of the record the Commissioner deems necessary, and so that the ALJ may adequately discuss the evidence as a whole and reevaluate his determination at step three.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**V.   CONCLUSION**[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  March 18, 2016

/s/
_____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[5]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.  On remand, however, the Commissioner may also wish to reassess plaintiff's credibility which currently appears to be based mostly on the lack of medical evidence.  See, e.g., Burch, 400 F.3d at 681 ("lack of medical evidence cannot form the sole basis for discounting pain testimony"); see also Brown-Hunter, 806 F.3d at 489, 493-94 (legal error where ALJ failed to identify claimant's testimony found not credible and failed to "link that testimony to the particular parts of the record supporting her non-credibility determination") (citing Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014)); Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) ("The clear and convincing standard [for discounting claimant's credibility] is the most demanding required in Social Security cases.") (citation and internal quotation marks omitted).

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).